Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Anne Heiting*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNE HEITING, an individual<br><br>Plaintiff,<br>vs.<br><br>FKA DISTRIBUTING CO., a California company; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-07314-HDV-AGR<br><br>**PLAINTIFF ANNE HEITING'S OPPOSITION TO DEFENDANT FKA DISTRIBUTING CO.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Hearing</u><br>Date: April 24, 2025<br>Time: 10:00 am<br>Courtroom: 5B |

# TABLE OF CONTENTS


**I. INTRODUCTION .................................................................................... 1**

**II. RELEVANT FACTUAL BACKGROUND ................................................ 2**

**III. LEGAL STANDARD ............................................................................ 3**

**IV. ARGUMENT ........................................................................................ 4**

*A. Defendant's First And Third Arguments Are Waived ........................................ 4*

*B. Plaintiff Alleges Facts Establishing Article III Standing ................................... 7*

*C. Defendant's Use Of A Trap And Trace Device And TikTok Obtaining Plaintiff's Personal Information Are Both Cognizable Article III Privacy Violations ..................... 9*

*D. Plaintiff Has Established A Cognizable Article III Injury because CIPA Protects A Substantive Right To Privacy ............................................................... 11*

**V. CONCLUSION ...................................................................................... 15**

# TABLE OF AUTHORITIES

Page(s)

Cases

846 F.3d 313 (9th Cir. 2017) ..... 5, 6

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ..... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 3

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 12, 14

*Cantu v. Tractor Supply Co.*, 2024 WL 1601257 (C.D. Cal. Mar. 21, 2024) ..... 13

*Conley v. Gibson*, 355 U.S. 41 (1957) ..... 3

*Doe v. White*, No., 2010 WL 323510 (C.D.Ill. Jan. 20, 2010) ..... 6

*Duran v. California Dep't of Forestry & Fire Prot.*, 2023 WL 5072443 (N.D. Cal. Aug. 7, 2023) ..... 11

*Eichenberger*, 876 F.3d ..... 12

*Frasco v. Flo Health, Inc.*, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ..... 14

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ..... 12

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019) ..... 14

*Kis v. Cognism Inc.*, 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) ..... 14

*Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022) ..... 13

*Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ..... 13

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ..... 11

*Pom Wonderful LLC v. Gida Maddeleri ITH IHR TIC SAN AS*, 2014 WL 12738923 (C.D. Cal. June 11, 2014) ..... 5

*Shah v. Fandom, Inc.*, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ..... 13

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ..... 11

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) .......... 10
*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 14

Statutes

Cal. Penal Code § 630 .......... 1
Cal. Penal Code § 638.51 .......... 9, 10, 13
Inst. 1977 .......... 12

Rules

Fed. R. Civ. P. 12(h)(1)(A) .......... 4, 5
Fed. R. Civ. P. 12(h)(2) .......... 5, 6
Fed. R. Civ. P. Rule 12(g)(2), 12(h)(1) .......... 2
Federal Rule of Civil Procedure 8(a)(2) .......... 3
Rule 12 .......... 4, 5
Rule 12(b) .......... 6
Rule 12(b)(2) .......... 4
Rule 12(b)(6) .......... 3, 4, 5, 6
Rule 12(c) .......... 4, 6
Rule 12(g)(2) .......... 4, 5
Rule 12(h)(1) .......... 5
Rule 12(h)(2) or (3) .......... 4
Rules 12(b)(2)–(5) .......... 4, 5

Other Authorities

Restatement (Second) of Torts § 652B cm .......... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is the second motion to dismiss that the parties have briefed in this case, and the only issue properly raised in Defendant's Motion is whether Plaintiff has now alleged facts sufficient to establish that she has suffered a cognizable Article III injury. Plaintiff has added allegations addressing the specific concerns identified by the Court in the hearing on the prior motion to dismiss as well as its decision that should assuage and satisfy the Court's concerns. In addition, because of the narrower scope of this Motion to Dismiss Plaintiff has the opportunity to present additional arguments not previously raised or considered that have convinced multiple other federal district courts in California that Article III courts have no difficulty addressing allegations like those in the SAC. In addition, since the Court's prior ruling there have been many more decisions addressing the same concerns expressed by the Court that now represent a meaningfully sized body of law reinforcing the obvious conclusion – privacy violations are very familiar and comfortable concepts within the scope of Article III courts and the concerns and the challenges identified by defendants are largely misplaced and misapplied attempts to evade liability by limiting the ambit of Article III. Such tactics are now more difficult in the face of numerous cases finding that Article III courts are perfectly well equipped to address claims under the California Invasion of Privacy Act, Cal. Penal Code § 630 *et. seq*. ("CIPA").

Defendant also improperly raises two new issues in its Motion - personal jurisdiction and some sort of failure to state a claim that borders on the unintelligible. These arguments were available to Defendant when it made its prior Rule 12 motion and its failure to include them in that motion means Defendant has waived them both for the purposes of this Motion. Fed. R. Civ. P. Rule 12(g)(2), 12(h)(1).

## II. RELEVANT FACTUAL BACKGROUND

Defendant is company that sells merchandise related to health and wellness through its website www.homedics.com (the "Website"). SAC ¶ 8. Defendant then contracted with TikTok to embed advertising related software created by TikTok (the "TikTok Software") into the Website. Plaintiff was in California when she visited the Website on March 4, 2024, after the TikTok Software's deployed commenced. SAC ¶¶ 4, 9. Plaintiff did not take any action to consent to being identified by the Website or to have any information on the device she used to visit the Website, or the browser she used, be transmitted to TikTok for identification or marketing purposes. SAC ¶¶ 19, 29.

As deployed on the Website, the TikTok Software serves as a de-anonymization process that identifies visitors for the marketing and surveillance purposes (and benefit) of Defendant and TikTok. SAC ¶¶ 10-17, 29. With the TikTok Software, the Website "gathers personally identifiable data including device and browser information, geographic information, referral tracking, and url tracking [from a Website visitor] by running code or 'scripts.'" *Id.*, ¶ 11 ("[This] is the entire purpose of the TikTok Software"). This collection of data happens as soon as a visitor, such as Plaintiff, lands

on the Website's homepage – before she has the opportunity to consent to the Website's alleged trap and trace device. SAC ¶¶ 11, 13-14, 16. The data from a visitor's browser on his or her device is transmitted by the TikTok Software on the Website to TikTok for the purpose of matching it with existing data TikTok has about the visitor, regardless of whether or not the visitor has a TikTok account. SAC ¶¶ 12-13, 16. TikTok can compare the visitor data sent from the Website with a massive database concerning hundreds of millions of Americans, for the purpose of "fingerprinting" or identifying a visitor (the sole objective of the TikTok Software). SAC ¶¶ 12, 17. The TikTok Software performs "fingerprinting" in part to target specific customers for a website operator like Defendant's future advertisements.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

/

/

## IV. ARGUMENT

### A. Defendant's First And Third Arguments Are Waived

Defendant for the first time now asserts the Court lacks personal jurisdiction over it under Rule 12(b)(2), and that the data collected was not sensitive or personally identifiable enough to state a claim under Rule 12(b)(6). But this is Defendant's second Rule 12 motion and both of these arguments were previously available to it and needed to be raised in its first Rule 12 Motion. Defendant's failure to do so means that it has waived the defense of personal jurisdiction in this case, and that its argument under Rule 12(b)(6) has been waived unless asserted in its answer, a motion under Rule 12(c), or at trial. Fed. R. Civ. P. 12(h)(1)(A). These arguments are therefore not properly before the Court and cannot be substantively addressed by the Court. That also means any substantive response by Plaintiff regarding personal jurisdiction would be improper and irrelevant to the resolution of the Motion, but Plaintiff will briefly address the Rule 12(b)(6) argument for reasons explained below.

The Ninth Circuit explained in *In re Apple iPhone Antitrust Litigation* that:

> Rule 12(g)(2) provides, "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." The consequence of omitting a defense from an earlier motion under Rule 12 depends on type of defense omitted. A defendant

> who omits a defense under Rules 12(b)(2)–(5)—lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process—entirely waives that defense. Fed. R. Civ. P. 12(h)(1)(A). A defendant who omits a defense under Rule 12(b)(6)—failure to state a claim upon which relief can be granted—does not waive that defense. Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6), but the defense may be asserted in other ways. Fed. R. Civ. P. 12(h)(2).

846 F.3d 313, 317–18 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019) ("*In re Apple*"); *see also Pom Wonderful LLC v. Gida Maddeleri ITH IHR TIC SAN AS*, No. CV1109249SJOFFMX, 2014 WL 12738923, at *2 (C.D. Cal. June 11, 2014) ("A defendant waives the defense of lack of personal jurisdiction by bringing a motion to dismiss without raising this defense."). The Ninth Circuit has noted this "singles out several Rule 12 defenses for an especially severe sanction. If a defense under Rule 12(b)(2)–(5) is not asserted in the first Rule 12 motion to dismiss, Rule 12(h)(1) tells us that the defense is entirely waived." *In re Apple*, 846 F.3d at 317–18. This was explained to Defendant during the required meet and confer for this Motion, and yet Defendant still chose to raise them anyway without even addressing the issue.

Although not raised by Defendant, out of an abundance of caution Plaintiff notes that prior to the Ninth Circuit's decision in *In re Apple* there was a "substantial amount of case law which provides that successive Rule 12(b)(6) motions may be considered where they have not been filed for the purpose of delay, where entertaining the motion would expedite the case, and where the motion would narrow the issues involved." *Doe v. White*, No. 08–1287, 2010 WL 323510, at *2 (C.D.Ill. Jan. 20, 2010) (collecting cases). Such decisions are no longer good law in light of *In re Apple*, but even there the Ninth Circuit noted it "should generally be forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion" because of the significant procedural delays and inefficiencies that may sometimes arise from a strict adherence to Rule 12(h)(2). *In re Apple*, 846 F.3d at 319. This is because instead of simply including the issue in its Rule 12(b) motion the defendant will have to file an answer and a new Rule 12(c) motion which will be identical in content and standard of review to the 12(b)(6) motion.

No such forgiveness can be extended in this case however, because it is very unclear what Defendant is even arguing under Rule 12(b)(6). Defendant appears to be arguing that a summary judgment decision in a different case involving the same pixel but brought under an entirely different law and theory for an entirely unrelated legal violation somehow requires the SAC to be dismissed under Rule 12(b)(6). If that is what Defendant is arguing, then virtually every clause in its argument is incorrect. The only point even worth mentioning is that even on its own terms Defendant's argument makes very little sense when applied to Plaintiff's Trap and Trace claim. Defendant's argument requires sensitive

or personally identifiable information in the content of messages that are intercepted to state some sort of CIPA claim, but a Trap and Trace claim under Section 638.51 looks at electrical impulses used for routing messages and expressly does not cover "the contents of a communication." Plaintiff cannot be faulted for failing to allege facts that are legally irrelevant to her claim.

### B. Plaintiff Alleges Facts Establishing Article III Standing

In its prior ruling the Court expressed concern regarding the paucity of descriptive details about Plaintiff's visit to Defendant's Website. Order Granting Def's Mot. to Dismiss at 5, ("MTD Order"), dkt. 29. The Court identified a number of facts that it believed could help it "infer a concrete injury, like when and how many times she visited the site, what information she provided, what information Defendant captured, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized." MTD Order at 5. Plaintiff continues to maintain that details such as these can be helpful in understanding the wrongdoing alleged and are often necessary to state a claim, but details like this are not required by Article III at this stage. Nonetheless, the Court desired details such as these to be alleged in an amended complaint and Plaintiff was more than happy to allege further details about what was so invasive about Defendant's conduct and why its feigned confusion and impossibly high requirements for Article III standing are not believable or supported by the law or facts of this case.

The SAC now contains allegations sought by the Court including:

- "Plaintiff visited the Website on March 4, 2024. The TikTok Software was already installed on the Website when Plaintiff visited." SAC ¶ 9.
- The device and browser information, geographic information, referral track, and url tracking captured by the TikTok Software will all contain personally identifiable data. SAC ¶ 11. It should be self-evident to anyone not currently being sued for violating Section 638.51 that capturing information like someone's geographic location will be personally identifiable.
- Moreover, even if a piece of information might not be have originally been personally identifiable at the moment Plaintiff visited the Website, the entire point of the TikTok Software is to personally identify what otherwise could not, and that is also precisely what is prohibited by Section 638.51. "In fact, it is designed solely to meet this objective and is a part of TikTok's own explanation about the TikTok Software[1]" SAC ¶ 17.
- And while the prior complaint alleged that the processes of the TikTok Software happened immediately upon visiting the Website, the SAC now alleges what logically followed by was previously unstated: Plaintiff also never knowingly provided any information to Defendant or TikTok." SAC ¶ 19.
- Finally, the SAC also clarifies a misunderstanding that the scope and breadth of TikTok's information gathering is specifically not limited to people with TikTok

[1] https://ads.tiktok.com/help/article/using-cookies-with-tiktok-pixel?lang=en

accounts. The SAC now alleges that the TikTok Software "collects information like this automatically on everyone who visits the Website, including Plaintiff, regardless of whether someone has a TikTok account. That is the entire purpose of the TikTok Software." SAC ¶ 11.

## C. <u>**Defendant's Use Of A Trap And Trace Device And TikTok Obtaining Plaintiff's Personal Information Are Both Cognizable Article III Privacy Violations**</u>

A more detailed explanation of the statutory requirements for a Trap and Trace device under Section 638.51 also provides a helpful context to understanding the harm involved and why many of the facts Defendant demands are simply not relevant. To be a Trap and Trace Device the process must capture "impulses that *identify* the originating number or other dialing, routing, addressing, or signaling information *reasonably likely to identify* the source of a wire or electronic communication[.]" Cal. Penal Code § 638.51 (emphasis added). Thus, Section 638.51 encompasses both information that does identify as well as information reasonably likely to make to identify and is relatively agnostic about what specific information is required (besides its exclusion of content information).

This demonstrates that liability is not based on, for example, how embarrassing or personal the captured information was because that is not the harm these types of statutes are concerned with or seek to prevent. Liability instead turns on whether a specific harm can be caused with the captured impulses– *i.e.* whether the captured impulses can be used to make an identification that both the United States Congress and California Legislature

concluded are entitled to remain anonymous unless one of the few narrow exceptions applies. One such exception is for law enforcement, and even then, only after satisfying the procedural and substantive requirements imposed by Penal Code Section 638.52 and 638.52 to obtain court authorization.

Defendant clearly thinks this is a harm that isn't specific or meaningful enough for Article III because it argues that "Plaintiff still does not allege any specific harm resulting from Defendant's alleged tracking." Mot. at 8. But Congress disagreed in 1986 and the California Legislature followed suit in 2015, and Section 638.51 clearly codifies a very specific injury and concrete harm – someone personally identifying which electronic communications are yours because they have a device or process that captures what are to them *incoming* electronic impulses, and those impulses further "identify the originating number or other dialing, routing, addressing, or signaling information" excluding the contents of a communication. This is no mere trifle to pull off. It requires both incredible skill and a unique of level access for your communication to be incoming to them in order to violate Section 638.51. And Defendant and TikTok's conduct is even more invasive because they can only pull it off through fingerprinting using the data TikTok has "acquired and accumulated about hundreds of millions of Americans." SAC ¶ 10. Stated simply, Plaintiff is entitled to browse the internet and visit Defendant's Website without having a trap and trace device used on her electronic communications and having her personal information sent to TikTok, particularly because TikTok and Defendant were profiting from their violations of her privacy. And even if Defendant and TikTok had never turned

a profit, Defendant and TikTok stripping Plaintiff of any ability to control her own personal information the moment she visited the Website is itself a concrete Article III injury. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) ("both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person.").

**D. <u>Plaintiff Has Established A Cognizable Article III Injury because CIPA Protects A Substantive Right To Privacy</u>**

Defendant appears to argue that "allegations of mere data collection" are not cognizable because Article III requires "allegations that the data was used in a harmful way," and "Plaintiff here fails to allege any facts showing that she suffered a tangible injury, such as identity theft, financial loss, reputational harm, or even an emotional distress claim linked to data misuse." But Defendant is flatly wrong about every one of those assertions. Courts have explained that "even without disclosure, a plaintiff can demonstrate a concrete injury if their personal information was unlawfully collected." *Duran v. California Dep't of Forestry & Fire Prot.*, No. 22-CV-06120-CRB, 2023 WL 5072443, at *6 (N.D. Cal. Aug. 7, 2023), *aff'd*, No. 23-16155, 2024 WL 3565266 (9th Cir. July 29, 2024). And in *TransUnion* the Supreme Court specifically explained that "[v]arious intangible harms can also be concrete" such as those causing intangible injuries similar to traditional torts like the disclosure of private information, intrusion upon seclusion, or reputational harm. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021);

*see also Patel v. Facebook, Inc.*, 932 F.3d 1264, 1271–72 (9th Cir. 2019) (explaining the common law roots of claims for invasion of privacy).

Thus, while a statute codifying a procedural right "would not invariably injure a concrete interest" and may require additional allegations of harm to satisfy Article III, *Eichenberger*, 876 F.3d at 982-83, no such additional allegations are required for violations of laws protecting a substantive right to privacy because "the violation of a statute that protects a 'substantive right to privacy' does result in a concrete harm." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 923–24 (N.D. Cal. 2023) (citing *Eichenberger*, 876 F.3d at 982). Defendant however argues that "[t]he Ninth Circuit has made clear that claims under privacy statutes must include allegations of actual harm to establish standing" and this patently false. Mot. at 8 (citing "*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)). The Ninth Circuit actually held that the Wiretap Act, Stored Communications Act, and CIPA each "codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc.*, 956 F.3d at 598.

Because CIPA codified a substantive privacy right, MTD Order at 5 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook"*), properly alleging a CIPA violation therefore does establish a concrete harm. *Id.* This principle is also particularly applicable for privacy violations because "[t]ellingly, privacy torts do not always require additional consequences to be actionable." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citing Restatement

(Second) of Torts § 652B cmt. b. (Am. Law Inst. 1977) (recognizing the tort of intrusion upon seclusion, for which the "intrusion itself" makes the defendant liable)); *Eichenberger*, 876 F.3d at 983-4 (holding that the Video Privacy Protection Act of 1988 "identifies a substantive right to privacy that suffers any time a video service provider discloses otherwise private information."). And Court has already concluded that Plaintiff has stated a claim for a violation of Section 638.51. MTD Order at 6-9. To the degree that any lingering Article III concerns remain and are based on whether or CIPA was violated, the jurisdictional question are necessarily intertwined with the merits of the CIPA claim and must be resolved on summary judgment or at trial. *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) ("where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.").

Defendant also appears to have misunderstood the MTD Order slightly because the two cases the Motion relies on for that proposition did not address Article III standing at all. *Id.* (citing *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at 5 (N.D. Cal. Oct. 21, 2024) and *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024)). The Court instead cited them with a "*cf*" signal as analogous examples of cases which alleged factual details that could help infer a concrete injury, although that does not fully explain why Defendant misstates their decisions. MTD Order at 5.

Many other courts have reached identical conclusions. *See, e.g., Cantu v. Tractor Supply Co.*, No. 2:23-CV-3027-HDV-JC, 2024 WL 1601257, at *2 (C.D. Cal. Mar. 21, 2024) (finding it sufficient to establish a concrete injury under *TransUnion* when a website's disclosure "allowed Google (and any ordinary person) to readily identify Plaintiff's video-watching behavior ... for the purpose of retargeting Plaintiff in connection with Google advertising campaigns.") (citing and discussing additional cases). Binding Ninth Circuit precedent has explained that various rights codified in CIPA are substantive and not procedural rights that are sufficient for Article III standing. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) ("The Ninth Circuit has found that each of the statutory claims brought here codify substantive rights to privacy.") (citations omitted); *see also Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024). Indeed, when "a legislature had declared that an injury is legally redressable, courts afford due respect to that decision. A legislature may elevate a legally protected interest into an injury for Article III purposes, though it cannot use its lawmaking power to transform something that is not remotely harmful into something that is." *Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553, at *2 (N.D. Cal. Aug. 23, 2024) (cleaned up); *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the SAC requires additional factual details to establish a cognizable Article III injury.

DATED: April 4, 2025

**TAULER SMITH LLP**

By: */s/ Narain Kumar*
Robert Tauler, Esq.
Attorneys for Plaintiff
Anne Heiting

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Anne Heiting, certifies that this brief contains 3,731 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 4, 2025 **TAULER SMITH LLP**

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorneys for Plaintiff
Anne Heiting